We'll move now to our final case of the morning, Appeal 25-2309. This is the Office of the Special Deputy Receiver v. Hartford Fire Insurance Company. We're going to begin with oral argument on behalf of the appellant, Mr. Whelan. Thank you, Chief Judge Brennan, and may it please the Court. My name is Chris Walling. I'm here on behalf of the appellant, the Illinois Office of Special Deputy Receiver. I'll call the appellant, O.S.D., from here on out. O.S.D. was the victim of a two-step computer hack. First, fraudsters hacked the internal email account of O.S.D.'s chief financial officer, and while doing so, rewrote the rules of his email software to hide their access. Then, impersonating the CFO, the hackers sent wire instructions within O.S.D.'s information technology systems from the CFO's account. Other O.S.D. employees followed those instructions, and the O.S.D. ended up losing around $4 million from this fraud. O.S.D. made an insurance claim for this hack to its insurer, Appellate Hartford, because its insurance bond contained a rider number 13, which specifically provides coverage for, quote, loss resulting directly from a fraudulent change or entry of electronic data in a computer program. However, as Hartford said in its brief here, this particular appeal concerns not rider 13, but a different and narrow legal issue, the proper interpretation of one sentence in another rider, rider 17, and whether that sentence excludes from coverage O.S.D.'s claim from the computer fraud. O.S.D.'s position is that the exclusion of rider 17 does not apply to its computer fraud claim. That exclusion, in relevant part, states that Hartford will not cover, quote, loss resulting directly or indirectly from a fraudulent instruction sent to the insured through electronic mail. The exclusion, I quote, only applies when emails are sent to the insured, which as a matter of plain language and in the context of the policy as a whole, only applies when parties outside the O.S.D. send the O.S.D. emails. Here, no third party sent an email to O.S.D. A third party gained illicit access to O.S.D.'s information technology systems and then, using that illicit access, sent an email within O.S.D. Again, my conclusion is that this is unambiguous based on the plain text of the policy, looking both solely at the exclusion and at the exclusion's location and operation within the policy as a whole, as Illinois law requires us to do. I'm confused on something. Where does it say outside email? When you read that sentence, I didn't hear it. It does not expressly say outside email, but Well, you just said the unambiguous language says outside. I'm confused. Your Honor, if I were to tell you in the afternoon, I have to go send an email, it would be a very strange conclusion for you to think, well, he's clearly sending an email to himself. Our position is that the phrase, send an email to, requires from outside the organization. Okay, so I agree with you there. You wouldn't send an email to yourself, but I'd have no idea whether you were sending an email inside your organization or outside your organization. The CFO didn't send an email to himself. That's not what happened here. At least in your description of the facts, that's not what you said. The bond is not for the CFO. The bond is for provides coverage to the OSD. And as described, the OSD sent an email to itself. An email went from the CFO's account to the accounts of other OSD employees without ever hitting or coming from an external domain. Well, I don't know. I mean, I just read it. It says sent to the insured, that would be OSD, through electronic mail. It doesn't say by whom. And so you're saying that provision excludes any email between any OSD employees. I would say that exclusion does not apply to intra-OSD email communications. Yes, that is my position. However, even if you're not totally with OSD on that position, all it takes for reversal and remand here for further consideration is that if this clause is ambiguous, such that it could be read in OSD's way or the way that district court read it, ambiguous insurance policies in Illinois are interpreted in favor of coverage. And although my primary position is that the exclusion is not ambiguous, it is unambiguously, it unambiguously does not apply to these facts as alleged by OSD. Mr. Walling, the language you quoted in the exclusion in Rider 7 in reliance upon a fraudulent instruction sent to the insured through electronic mail, that seems to echo the language in the Rider in paragraph 1 under electronic mail initiated transfer fraud, right? Loss resulting directly from the insured having good faith transferred, et cetera, et cetera, in reliance upon a fraud instruction sent to the insured through electronic mail. Yes, Your Honor. And then it seems like what the parties are talking about there as elucidated in that paragraph seems to be emails that are coming from a customer or someone that appears to be a customer or an agent of the customer. Indeed, Your Honor, yes. So our position is that when looking at that exclusion language in the context, especially of the rest of the coverage provided by the Rider, the Rider provides OSD this particular Rider 17, provides OSD coverage for emails when they are from a customer or they contain instructions of a customer or they're from another financial institution on behalf of a such customer. In that context, the customer framework, as we said below, is also what should guide our interpretation of the exclusion in that same Rider. The exclusion should be read to require emails or communications from third parties such as customers, which is what the policy provides coverage for. But again, I believe it's unambiguous, but if ambiguous, you could argue that there's two ways the parties are interpreting this contract. OSD's interpretation is to the insured from another outside of OSD, and Hartford's interpretation is to the insured including emails within OSD to and within the insured. Both of those interpretations are arguably reasonable, but that makes the insurance policy ambiguous in Illinois. And again, under Illinois law, if there is a policy subject to two reasonable interpretations, this court must interpret that policy in favor of OSD, the insured, and find that the exclusion does not apply here. Mr. Walling, there seems to be a disagreement among the parties as to whether or not, you know, putting Rider 17 aside, whether the lawsuit is covered by Rider 13. Yes, Your Honor. As Hartford explained in its appellee brief and as we accepted in our reply, OSD's position is that Rider 13 provides coverage for this claim. Hartford's position is that Rider 13 does not provide coverage for this claim. Our position is that that's a necessary background argument, because otherwise the application of Rider 17 would be, the exclusion would be irrelevant. But as Hartford acknowledged below, it did not present its arguments to the district court as to the applicability of Rider 13. So if we, let's say hypothetically, if we agree with you, then we would, what, we would remand to the district court to evaluate whether or not the loss falls under Rider 13? Yes, Your Honor. If you agree with me, the proper course is both parties acknowledge, including Hartford at the last page of its appellee brief, the proper course is to remand for further determination of coverage under the bond. Would you like to reserve the remainder of your time? Yes, Your Honor. Very good. Thank you, Mr. Wailing. Mr. Brown, we'll move to you now for oral argument on behalf of the appellee. Thank you. May it please the court, my name is Ted Brown, and I represent Hartford Fire Insurance Company. Hartford respectfully asks that this court affirm the district court's ruling in its favor, because the email fraud exclusion in Rider 17 is clear, unambiguous, and plainly applicable here. Mr. Brown, is there a definition of, quote, the insured, end quote, in the bond? I'd have to look, Your Honor. I believe the insured's identified in the declarations page, and it would include OSD. I know that there's also some endorsements that add specific named insure, or specific insureds elsewhere that were otherwise in the bond, but I don't believe that issue has ever been addressed or presented in argument. Thank you. You may continue. Thank you. There are two key arguments OSD makes in this appeal, and both arguments should be rejected. First, OSD argues that the email fraud exclusion in Rider 17 doesn't apply to the coverage under Rider 13. This argument, in effect, treats the exclusions as walled off independent contracts. The argument violates basic principles of contract law and the plain language of the emails purported to come from one OSD employee to another. There are two key reasons OSD's argument fails. First, OSD waived this argument by not raising it below. And second, putting waiver aside, OSD's arguments are wrong on the merits. The argument, one, requires adding words to the bond that are not there. Two, it's inconsistent with the plain language of the bond. And three, it's inconsistent with how the exact same phrase is used in the exact same Rider, and that's the insuring agreement. Starting first with the structural argument, the district court correctly interpreted Rider 17 and 13 to be part of... Could you address the last point? Sure. That is, you know, read in context. Why doesn't the exclusion only apply to emails that appear to have originated from a customer or an agent of the customer? Yes, Your Honor. There's several reasons for that. First, if we start with the plain language of the exclusion, and this is shown on Supplemental Appendix, page 76. This is Rider 17, page 2. We see the exclusion. It adds it to the bond. It modifies the full bond. And then it includes the language. It says, in reliance upon a fraudulent instruction sent to the insured through electronic mail. That language is broad. It's unqualified. It does not require any inquiry in terms of who the external sender was. But the... I understand that. But, you know, we have to read things in context, right? And it strikes me that in context, what this Rider is talking about is what's described in the actual main body of the Rider, which is fraudulent instructions that appear to be coming from customers or customers' agents. Particularly when the language, you know, the language, loss resulting, et cetera, et cetera, et cetera, is exactly the same. And so why isn't that a reasonable interpretation of the exclusion? That means it basically echoes what the Rider was meant to cover. Well, I agree with you, Judge, that we have to look at this in context. But I think it actually supports Hartford's position. Here's why. When you look at the insuring agreement on the Rider 17, it refers to loss resulting from the transfer of funds, and I'm quoting here, in reliance upon a fraudulent instruction sent to the insured through electronic mail. That's the exact same language that's used in the exclusion. But then you go to 1b, and it says, which purports and reasonably appears to have originated from an employee. And an employee here would be an employee of OSD. And so reading this in context... But it's employee acting on instructions of such customers, just not a random employee. And the emails here did not purport to be an employee acting on the instructions of a customer. Your Honor, we respectfully disagree. And I think the key is it depends on what the word as we might use that term in ordinary parlance. The problem is in the insuring agreement, if you look at customer, it's capitalized. And so when you're looking at the insuring agreement, customers capitalized, that means it's a defined term. And when you scroll down to the bottom of Rider 17, customer is defined as an entity or individual which has a written agreement with the insured, authorizing the insured to transfer funds or other kinds of reliance upon electronic mail instructions transmitted to the insured. And so customer as used in the policy, as used in the Rider, could refer to a company that has a contract with OSD to make investments. And that's exactly what's alleged to have been the genesis of these emails here. There was an email that purportedly came from an employee, this is the CFO, and it came on behalf of records not clear in terms of whether they're a customer, capital C is the terms defined in the policy, because those facts weren't alleged. But at the end of the day, that's exactly what 1B speaks to, is this kind of email. So if an email can be sent to the insured for purposes of the insuring agreement, and it can be sent to the insured by an employee for purposes of the insuring agreement, likewise for the exclusion, it can be sent to the insured through electronic mail. Can you remind me what exactly the email said, the emails? The emails, I'd have to go to the record, Your Honor, and I apologize, I don't have those emails offhand, and I'm not sure if they're in the record. But generally speaking, they instructed an employee at OSD to make certain wire transfers, and I think at least the complaint alleged that they were for the purposes of certain investments, and they were sent to banks overseas and that sort of thing. And so I think when you're reading this in context, and you're reading the insuring agreement to the insured, in the exact same rider as the exclusion to the insured, it's clear that these exact types of emails are exactly what triggers the exclusion in Rider 17. On this point as well, OSD points to Riders 11 and 12, which cover different types of fraud. It argues that these support its reading. The problem with OSD's arguments, neither of these Riders use the phrase to the insured, and they really speak to different requirements under different coverages, and they don't change the language of the exclusion. The language of the exclusion is broad, it's unqualified, and it doesn't depend on the purported sender of these emails. Another reason that this court could rule in Hartsford favor is because this issue was waived. It wasn't raised below, and we noted in our notice of supplemental authority the Crothersville case, which addressed the waiver issue. When you look at it, it provides a lot of explanations for the raise it or lose it rule, but one of the key things it says is it prevents parties from getting two bites at the apple by raising two distinct arguments before each court. As a corollary to that, it says that it supports the significant but limited job of our appellate system, which is to correct errors made by the district court in assessing legal theories presented to it, not to serve as a second-shot forum for backup theories of the case. Now, if you look at the district opinion here, there's actually no reference whatsoever to this argument OSD is now making on appeal because the issue wasn't presented. If you go to OSD's appeal below appellate briefing, you'll see there's no quote to the exclusion in OSD's brief. They don't describe the exclusion, and they don't discuss the exclusion's language in any way. So in our view, it's a clear-case waiver. Finally, back to the initial point about whether the policy is self-contained and you can treat Rider 13 as one contract and Rider 17 as another, we highlighted some of the key points in our brief. I'll just highlight a few that demonstrate the key flaws in OSD's argument. First, if you look at the exclusion section of the main bond form, you'll note it says the bond doesn't cover. That's the bond as a whole, not independent insuring agreements. Next, you'll see that there's a reference to, for example, exclusion A. It excludes, has a broad exclusion, and that has a carveback for certain insuring agreements. This shows that the bond knows how to make it so that a particular exclusion will not apply to an insuring agreement, but that wasn't done here. And in fact, if you go to Rider 13, third page of it, you'll see that there is a particular exclusion that Rider 13 says doesn't apply to the coverage under Rider 13, but that that was not done with the exclusion in Rider 17. And then finally, when we look at Rider 17, just some of the key points here. This is on Supplemental Appendix page 75. It says the Rider's part of the bond, forms part of the bond very top, top line of all bold, all caps. The Rider changes the bond. Please read it carefully. And then again, the next page, when it's adding the exclusions, it says conditions and limitations of the bond are amended to include, and it adds this exclusion. That further demonstrates the clear and sweeping nature of the exclusion. Thank you very much, Mr. Brown. Mr. Whaling, we'll go back to you now for a rebuttal argument. Thank you, Your Honor. My friend on the other side made one key concession that requires this court to reverse and remand, which is that the record is not clear. The court cannot dismiss our complaint when it is not clear whether or not the coverage falls under the Rider's, either 13 or the exclusion in 17. That is enough to remand. Chief Judge Brennan, your question about the definition of insured, it's on the Supplemental Appendix page 33, and it is simply name of the insured, hearing called the insured, capital letters, Office of the Special Deputy Receiver. Thank you. I want to dispute my friend's characterization of the emails. If you look at our complaint, paragraph 16, there is no indication, we did not plead that those emails were purported to be from a customer, from an insurance broker, or an investment entity, or anyone but purportedly the CFO. When the email is not from any third, which is why we frame our argument as from third parties due to that slightly expanded definition of customer and the exclusion, there's no indication that the CFO was acting on instructions of any third party or that any third party was applied. That's why this case falls under Rider 13, because again, hackers directly gained access to the OSD's information technology systems, directly changed software rules in order to cover their access and use their direct access, not third party email sent to OSD, but direct access to cause the fraudulent wire transfers in this case. And my last point quickly is just that my friend on the other side mentioned that the phrase employee is used in the coverage. Again, employee there is defined in the policy as being an employee of OSD, but Hartford alternates when the bond as to what employee actually means. If your answer is five, you'll see that Hartford alternatively uses qualifications on employees. Sometimes employee is unqualified. Sometimes it's qualified as the insured's capital employee or the capital employee of the insured. So it is not completely clear in the Riders that employees always necessarily refers to employees of OSD. And unless your honors have any additional questions, we ask that you remain for further proceedings. Thank you very much, counsel. The case will be taken under advisement. That will close our oral argument for today. Thank you.